# SPRING-SPECIAL TERM.

## CHARLESTON.

### YATES *v.* TOWN OF WEST GRAFTON.

Submitted January 24, 1891.—Decided March 7, 1891.

1. RAILROAD COMPANY—MUNICIPAL CORPORATIONS—STREETS AND ALLEYS.

   Where a county-road has been included within the limits of an incorporated town, and the municipal authorities of said town

have assumed control of such road, they may, under their general powers conferred by statute with reference to streets, alleys *etc.*, authorize a railroad company to use a portion of said road for the purpose of constructing its railway along the same, in accordance with the statute which provides for such construction.

2. RAILROAD COMPANY—MUNICIPAL CORPORATIONS—STREETS AND ALLEYS—CONSTITUTIONAL LAW.

Such transfer of the use of a portion of such road to a railroad company for the purpose of constructing its railroad thereon in the manner prescribed by statute is not a taking of the property without the consent of the owner of the fee, as is contemplated by Article III, ⸹ 9, of the constitution.

3. RAILROAD COMPANY—INJUNCTION.

The owner of lots and lands adjoining said road, along which such railroad is constructed, whether they own the fee in the ground occupied by the road or not, can not enjoin the railroad company from constructing its railroad along the road in the manner required by the statute, unless the injury therefrom with entirely destroy the value of his property, and thereby be equivalent to a taking of it by said railroad company.

4. INJUNCTION.

When an injunction is wholly dissolved, the bill will be dismissed, unless a sufficient cause be shown against such dismission.

*H. M. Dent* for appellant, cited 33 W. Va. 1; 23 W. Va. 406; 32 W. Va. 9.

*J. H. Holt* and *J. A. Hutchinson* for appellees, cited Code, c. 47, s. 28; 102 Ia. 397; 32 W. Va. 6; 59 Am. Rep. 795; Bridge *v.* Summers, 13 W. Va.; 44 Am. Dec. 597, 598; 23 W. Va. 407; 33 W. Va. 1.

ENGLISH, JUDGE:

On the 6th day of July, 1889, Thornburg B. Yates filed a bill in the Circuit Court of Taylor county against the town of West Grafton and others, in which he alleged that in 1870 the County Court of Taylor county established a county road over and through lands belonging to him and the defendant Jed. W. Yates, for public use and convenience, within the now corporate limits of said town, from a point near the north-western corner of the fair ground to the Webster road, at or near the National Cemetery, which road was alleged to be shown on a plat exhibited therewith,

designating the portion of said road from the point, A, to the point, B, as the part expressly made the subject of reference and controversy in the bill; that said County Court immediately took possession of said road and occupied the same until the year 1874, when the town of West Grafton was incorporated, and said road, then falling within the corporate limits of said town, came under the jurisdiction of the common council of said town, who continued to hold, work, occupy and use the same as a public road until the matters therein complained of occurred; that in the year 1886 the lands through which said road passed were partitioned between the plaintiff and the defendant Jed. W. Yates, and plaintiff was assigned the land on one side of the road, and defendant Jed. W. Yates the land on the other side of the road; but said road was not taken into consideration in said partition, but was left undisturbed for the use of the public. A copy of the decree of partition and the plat showing said road was exhibited with said bill.

He also alleged that he was still the owner in fee, subject to public uses, of the undivided half of said road, and that in case of the abandonment thereof by the public the same would revert to him; that said road is an absolute and indispensable necessity for him to use in going to and from the residue of his lands, as shown on said plat as tracts Nos. TT and C, and that the closing of said road will cut off his communication with said lands, and greatly impair, if not entirely destroy, their market value; that when said road was established, which was during plaintiff's minority, he claimed no damages for the land taken for said road because of its peculiar benefit to his other lands, but that, notwithstanding the premises, the plaintiff charged, the common council of the said town of West Grafton against the public interests, of which it is the guardian, and to the destruction and damage of plaintiff's private rights and property conceived the unlawful purpose of abandoning said road, and allowing the same to be wholly obstructed and closed up by the defendant railroad company for its own private purposes, and actually entered into a contract with said company to abandon said road to said company's

private uses in consideration of the payment by said company to said town of the sum of two hundred and fifty dollars. A copy of this order of the common council was exhibited with said bill.

The plaintiff further alleged that, if said town authorities were permitted to carry out their said contract with said company, and said company was permitted to obstruct and close up said road by virtue of said contract, the plaintiff would be irreparably injured and damaged thereby, and his reversionary interest in said road would be taken for private purposes without just compensation. He therefore prayed that said town authorities might be enjoined and restrained from carrying out said contract with said company, and that said company might be enjoined and restrained from obstructing said road, and that upon a final hearing said town might be compelled to open and keep open said road for public use; and for general relief.

The defendant the town of West Grafton and several members of its council demurred separately to the plaintiff's bill, in which demurrer the plaintiff joined; and on the 18th day of November, 1889, the court sustained said demurrers, dissolved the injunction which had been awarded therein in accordance with the prayer of the bill, and dismissed the plaintiff's bill, with costs, and from this decree the plaintiff applied for and obtained this appeal.

Did the court below commit an error in sustaining the defendant's demurrer? Our statute (Code, c. 47, s. 28) provides that "the council of such city, town or village shall have power therein to lay off, vacate, close, open, alter, curb, pave and keep in good repair roads, streets" etc., "for the use of the public or any of the citizens thereof." Under this statute the towns in this State, so far as streets, roads, alleys etc. lie within their limits, have full power to open, close, vacate or alter the same. It is alleged in the bill, that after the incorporation of the town of West Grafton, in 1874, said road fell within the corporate limits of said town, and was worked and used by the common council thereof; and the plaintiff bases his claim for relief on the fact, that on the 16th day of April, 1889, the council of said town made the following order, to wit: "That part

of what is known as the "Fair Ground Road," (describing the part referred to) "be abandoned to the use of the Baltimore & Ohio Railroad Company for and in consideration of two hundred and fifty dollars to be paid by said Baltimore & Ohio Railroad Company to the corporation of West Grafton."

The plaintiff claims that this order shows, that the council of said town has conceived the unlawful purpose of abandoning said road, allowing the same to be wholly obstructed and closed up by the defendant railroad company for its own private purposes. This allegation, however, is inconsistent with the order of said town council, which is above quoted, and which is exhibited and made part of the bill. If said council had seen proper to absolutely vacate said street, the statute, as we have seen, confers upon them full power to do so; but according to my construction and interpretation of the language used in said order it did not vacate said road or any part of it, but for a consideration it abandoned a portion of said road, not absolutely but to the use of another public highway, to wit, the Baltimore & Ohio Railroad.

The constitution (Art. XI, § 9) provides that "railroads heretofore constructed, or that may hereafter be constructed, in this state, are hereby declared public highways, and shall be free to all persons for the transportation of their persons and property thereon under such regulations as may be prescribed by law" *etc.*, and while it might be true that said town council had no right to receive pay for the easement they thus surrendered, yet this action was something of which the plaintiff could not complain, and, as said town was not the owner of the fee-simple in said road, as a matter of course it could in no manner confer such title upon the railroad; but the effect and result of the order was to transfer the easement to the railroad company as to a portion of said road; and this Court has held in the case of *Arbenz* v. *Railway Co.*, 33 W. Va. 11 (10 S. E. Rep. 14) that "the use by a railroad under legislative authority of the street of a city in its ordinary use, as a means of travel and transportation, is not an abandonment or perversion of the street from its original purposes. *  *  *

To construct and operate such lines, it is necessary that cities shall be traversed by them. The city is necessarily traversed by and through its streets, and by laying a railroad track through or along a public street the use and comfort of the latter as a highway must be somewhat impaired. When this is done under proper authority, it is but the assertion of so much of the sovereign power and discretion, by which the enjoyment of one right or easement is abridged, that the public may have another deemed to be of greater value. This doctrine is especially true in this state, because our constitution (Art. XI § 9) expressly declares that all railroads shall be public highways, free to all persons for the transportation of their persons and their property. The use of a street, therefore, in this state by a railroad for its track, is not an abandonment of the easement, but simply the imposition of an additional servitude for the benefit of the public." In the case of *Spencer* v. *Railroad Co.*, 23 W. Va. 426, GREEN, J., in delivering the opinion of the Court, quotes from the case of *Railroad Co.* v. *City of Newark*, 10 N. J. Eq. 352, this passage: "It follows that where a public highway is used in common with the public, under the sanction of legislative authority, it may enjoy such use without making compensation to the owners in fee of the adjacent land, and that the legislature may authorize such use without providing compensation to the owners in fee of the adjacent lands, even under the existing constitution of the state, which provides that individuals or private corporations shall not be authorized to take private property for public use without just compensation first made to the owners. The authority to use a public highway for the purpose of a railroad, retaining the use of such highway for all ordinary purposes, subject only to the inconvenience of the railroad, is not such taking of private property from the owner of the fee of the adjacent lands as is contemplated by this provision of the constitution. The easement of the highway is in the public, although the fee is technically in the adjacent owner. It is the easement only which is appropriated, and no right or title of the owner is interfered with.

In the same case on page 427 this Court held as follows:

"It is obvious, therefore, that when a railroad company is authorized by the legislature by an express statute, or when authorized by a town council by the authority of a legislative statute, which is the same, it can not, either at common law or in a Court of equity, be sued or enjoined, if it is proceeding to build its road in such street carefully and skillfully, and in a manner least injurious to others; and if the constitution gives the owner of an adjoining lot no redress, the injury he sustains must be regarded as *damnum absque injuria*."

It follows that if the railroad company could not be enjoined by the owner of the fee from constructing its track when that authority was conferred by the town-council, the town authorities could not be restrained from granting permission to said railroad company to construct its track along the street because this Court, in deciding that a railroad when authorized by a town-council to construct a railroad track along one of its streets could not be enjoined from so doing, passed upon the right of the town-council to grant such permission. The town-council under the statute only has the control of the easement; and, not being the owner of the fee-simple, no act on its part could confer the fee-simple upon the railroad company. The council can transfer only the use of the easement, and such transfer, as we have seen, "is not an abandonment of the easement, but simply the imposition of an additional servitude for the benefit of the public;" and the order of the town-council by its language does not abandon said road, but does abandon a part of what is known as the "Fair-Ground Road" to the use of the Baltimore & Ohio Railroad Company. This order of the council of the town of West Grafton does not in any manner purport to confer upon said railroad company the fee-simple of the land occupied by said road, and the plaintiff in his bill does not allege that said road has been taken, but does allege "that, if the town authorities are permitted to carry out their said contract with said company" *etc.*, he will be irreparably injured and damaged thereby, and his reversionary interest in said road will be taken for private purposes without just compensation; but when we look to the order made by

said council we find that the privilege thereby conferred upon said railroad company in no manner constitutes a taking of the fee-simple of the property, under the ruling in *Railroad Co.* v. *City of Newark, supra.*

. Our Code (c. 54. s. 50) among other things, expressly confers upon railroad companies the power to construct such railways "across, along, or upon any stream of water, water-course, street, highway, road, turnpike or canal which the route of such railroad shall intersect or touch; but such corporation shall restore the stream, water-course, street, highway, road, turnpike or canal thus intersected or touched to its former state, or to such state as not unnecessarily to have impaired its usefulness, and to keep such crossing in repair: * * * provided, that, in case of the construction of said railroads along highways, roads, turnpikes or canals, such railroads shall either first obtain the consent of the lawful authorities having control or jurisdiction of the same, or condemn the same, under the provisions of section 48 of this chapter."

Dillon's Municipal Corporations (vol. 2, § 666) asserts the law upon this subject as follows: "The plenary power of the legislature over streets and highways is such that it may, in the absence of special constitutional restriction, vacate or discontinue the public easement in them, or invest municipal corporations with this authority. Without a judicial determination, a municipal corporation, under the authority conferred in its charter ' to locate and establish streets and alleys, and vacate the same,' may constitutionally order the vacation of a street; and this power, when exercised with due regard to individual rights, will not be restrained at the instance of a property owner claiming that he is interested in keeping open the streets dedicated to the public."

Under the law then, as it exists, the municipal authorities of said town having the right to authorize said railroad company to construct and operate its railroad along a portion of said road lying within the limits of said town, and said railroad company under the statute having the power to accept said use and privilege, and to construct its railroad along said road, it being expressly provided in the

statute that, in so doing "such railroad shall restore the road so intersected or touched to its former state, or to such a state as not unnecessarily to impair its usefulness," and it having been held, as we have seen, in 10 N. J. Eq. 352, that "the authority to use a public highway for the purpose of a railroad, retaining the use of such highway for all ordinary purposes, subject only to the inconvenience of the railroad, is not such taking of private property from the owner of the fee of the adjacent lands as is contemplated by the provision of the constitution in reference thereto"—my conclusion is that the plaintiff by his bill and exhibits has not presented such a case as entitles him to the relief prayed for. The court below, therefore, acted properly in sustaining the demurrer and dissolving the injunction.

It is claimed that the court erred in dismissing the plaintiff's bill, but our Code (c. 133, s. 13) provides : "When an injunction is wholly dissolved, the bill shall be dismissed with costs, unless a sufficient cause be shown against such dismission." It does not appear that any such cause was shown, and no motion was made for leave to amend.

The decree complained of must be affirmed, with costs and damages to the appellee.

Affirmed.